Filed 8/25/22  Marriage of Whittlesey CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Marriage of AUDREY and ANDREW WHITTLESEY.<br><br>AUDREY DALE WHITTLESEY,<br><br>    Appellant,<br><br>      v.<br><br>ANDREW BOLGIANO WHITTLESEY,<br><br>    Respondent. | G060180<br><br>(Super. Ct. No. 16D006973)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Franz E. Miller, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Sullivan Law & Associates, Richard P. Sullivan and Steve Ra for Appellant.

Law Offices of Marjorie G. Fuller, Marjorie G. Fuller; Law Offices of Teresa McNamara, Teresa McNamara; Law Offices of Lisa R. McCall and Lisa R. McCall for Respondent.

\*          \*          \*

After judgment was entered in a marital dissolution matter, the trial court denied the wife's request for attorney fees and for prejudgment interest. The court found the wife did not make an initial showing of lack of parity in the parties' ability to retain counsel, justifying the court's denial of a need-based attorney fees request under Family Code section 2030.[1] The court properly exercised its discretion in denying the request for attorney fees pursuant to section 1101, subdivision (h), as the court had awarded the wife 100 percent of the community property assets the husband transferred in breach of his fiduciary duties. For the same reason, the court did not err in denying an award of prejudgment interest on those community property assets. The wife now appeals. We affirm the judgment.

I

FACTS AND PROCEDURAL BACKGROUND

Audrey Whittlesey[2] filed a petition for legal separation from Andrew Whittlesey in August 2016, after 55 years of marriage. Andrew responded to the petition with a request for dissolution of the marriage. A status only judgment of dissolution was entered in February 2017.

The parties stipulated to the appointment of the Honorable Franz E. Miller (Ret.) to hear all remaining matters as a temporary judge; trial was conducted over multiple days in February 2020. After trial, the parties filed multiple briefs and supporting documents regarding attorney fees. The court issued three oral or written tentative rulings, and three statements of decision.

---

[1] Unless otherwise specified, all further statutory references are to the Family Code.

[2] We refer to the parties by their first names to avoid confusion because those involved share the same last name.

2

Judgment on reserved issues was entered in March 2021. As is relevant to this appeal, the judgment provides as follows:

1. Andrew breached his fiduciary duty to Audrey by transferring several community property assets to his girlfriend.[3] Because the court found that Andrew acted with fraud, malice, and/or oppression in doing so, Audrey was awarded 100 percent of these assets pursuant to section 1101, subdivision (h);

2. Audrey failed to prove Andrew breached his fiduciary duty as to other transfers of community property;

3. Andrew was required to make a $1,131,214 million equalization payment to Audrey;

4. Each party would bear their own attorney fees and costs;

5. The court chose not to exercise its discretion to award Audrey attorney fees under section 1101, subdivision (h), in addition to the award of 100 percent of those community property assets;

6. Audrey did not request need-based attorney fees under section 2030. Even if she had, the court found she had failed to show any inequity between the parties' ability to pay attorney fees, in light of "the magnitude of assets, inclusive of the magnitude of the assets [Audrey] gains from the award under Family Code § 1101(h), the substantial multi-million dollar value of the community estate being divided, and the fact that both sides spent over one million dollars in attorney's fees and costs contesting the issues of this case, and all other applicable statutory factors." The court therefore exercised its discretion not to award her need-based attorney fees; and

---

[3] At the time of these transfers, Audrey was (and still is) suffering dementia. After Audrey and Andrew's marriage was dissolved, Andrew married the girlfriend.

3

7. Although the court had discretion to award prejudgment interest, it did not do so in this case because, among other things, it was awarding 100 percent of the improperly transferred community property interests to Audrey.

Audrey filed a notice of appeal.[4]

## II

## DISCUSSION

### A. *Standard of Review*

The issue of attorney fees "'in a dissolution proceeding is left to the sound discretion of the trial court.'" (*In re Marriage of Duncan* (2001) 90 Cal.App.4th 617, 630.) We must affirm the order granting or denying attorney fees "unless '"no judge could reasonably make the order made."'" (*Ibid.*) Similarly, we review for abuse of discretion the trial court's order awarding or denying prejudgment interest. (*Esgro Central, Inc. v. General Ins. Co. of America* (1971) 20 Cal.App.3d 1054, 1064.)

### B. *Attorney Fees*

On appeal, Audrey challenges the trial court's decisions not to shift attorney fees under sections 2030 and 2032, and not to award her attorney fees for Andrew's breach of fiduciary duty under section 1101, subdivision (h).[5]

---

[4] Andrew filed a notice of cross-appeal. On the parties' stipulation, this court dismissed the cross-appeal.

[5] In the trial court, Audrey also requested attorney fees under sections 271 and 2107, subdivision (c). The court denied the request under these sections. Audrey does not make any argument in her appellate briefs specific to these issues; they have therefore been forfeited. An argument not separately raised under its own heading and supported by cogent argument and citation to authority is deemed waived. (*Winslett v. 1811 27th Avenue LLC* (2018) 26 Cal.App.5th 239, 248, fn. 6; *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179; *Roe v. McDonald's Corp.* (2005) 129 Cal.App.4th 1107, 1114; see Cal. Rules of Court, rule 8.204(a)(1)(B).)

1. S*ections 2030 and 2032*

The purpose of need-based attorney fees under sections 2030 and 2032 is to "ensure that each party has access to legal representation" in marital dissolution matters. (§ 2030, subd. (a)(1); *In re Marriage of Falcone & Fyke* (2012) 203 Cal.App.4th 964, 974-975; *In re Marriage of Rosen* (2002) 105 Cal.App.4th 808, 829.) To determine whether a party is entitled to fees under those statutes, the court must first make findings on "whether an award of attorney's fees and costs under this section is appropriate, whether there is a disparity in access to funds to retain counsel, and whether one party is able to pay for legal representation of both parties." (§ 2030, subd. (a)(2).)

Once a party's entitlement to fees has been determined under section 2030, the trial court proceeds to decide what amount of fees would be "just and reasonable under the relative circumstances of the respective parties." (§ 2032, subd. (a).) This determination requires the court to consider the factors set forth in section 4320. (§ 2032, subd. (b).) "The fact that the party requesting an award of attorney's fees and costs has resources from which the party could pay the party's own attorney's fees and costs is not itself a bar to an order that the other party pay part or all of the fees and costs requested. Financial resources are only one factor for the court to consider in determining how to apportion the overall cost of the litigation equitably between the parties under their relative circumstances." (§ 2032, subd. (b).)

*a. Audrey did not request need-based attorney fees under section 2030.*

The first question we must consider is whether Audrey made a request for attorney fees under section 2030. Her appellate briefing assumes that a trial court may order one party to pay the other's attorney fees in a dissolution matter under section 2032 without first finding under section 2030 that such an award is necessary to achieve parity between the parties in their ability to retain counsel. The language of section 2030 requires the trial court to make findings that (1) an attorney fees and costs award is

5

"appropriate," (2) "there is a disparity in access to funds to retain counsel," and (3) one party is able to pay for both parties' legal representation, before considering whether an award of attorney fees by one party to the other is appropriate. (§ 2030, subd. (a)(2); *Mooney v. Superior Court* (2016) 245 Cal.App.4th 523, 536 [error to make attorney fees award absent "disparity" findings].) The language of section 2032, subdivision (a), makes clear that the trial court "make[s] an award of attorney's fees and costs under Section 2030 or 2031." Therefore, if Audrey did not request fees under section 2030 and make an initial showing that there was a disparity between her and Andrew's access to funds to retain counsel, the trial court would not have erred in denying an award of attorney fees under section 2032.

In Andrew's posttrial brief regarding attorney fees, he stated: "[D]uring trial, Audrey's counsel represented that he was withdrawing Audrey's claim for need-based fees pursuant to Family Code §2030 and sanctions pursuant to Family Code §271."

Audrey's trial court briefs regarding attorney fees and costs do not affirmatively show a request or evidentiary proof that attorney fees should be shifted due to financial need. Her first brief regarding attorney fees, costs, and sanctions, filed in March 2020 after the court had orally issued its tentative ruling and findings, says the following regarding section 2030: "Family Code §2030 et. seq. gives the Court power to make an award of attorney's fees and costs based on the parties' respective needs and ability to pay. At the time of filing the dissolution action, [Audrey] was unaware that the community estate was worth over $25 million. Accordingly, [Audrey] had to engage in massive discovery and independent investigation as to the true nature and extent of the estate, as [Andrew] was not trustworthy. [¶] All the fees and costs incurred by [Audrey]'s counsel were reasonable and necessary, in light of [Andrew]'s recalcitrance in this action (using community funds without proper notice and consent)." As of that time, Audrey had incurred $1.7 million in fees. The brief did not identify any of the section 4320 factors.

6

Audrey filed another brief regarding attorney fees and costs in July 2020. Again, this brief did not claim entitlement to attorney fees under section 2030 but did contend, under section 2032, that "a consideration of all the relevant circumstances makes it just and equitable for an award of contributory attorney's fees and costs by [Andrew]." (Capitalization omitted.)

In the statement of decision issued August 6, 2020, the trial court stated: "The tj[6] awaits further briefing and declarations on any claim for fee shifting under Family Code sections 2030 *et sequitur* [¶] [but] . . . it is extremely unlikely the tj would engage in any fee shifting given the magnitude of assets each party will receive." In an amended statement of decision, the court restated the foregoing language, but added that "[e]ach party shall bear his or her attorney fees." After Audrey objected to the amended statement of decision, in part, because the court had not allowed any argument on the issue of attorney fees, the court vacated the statement of decision and ordered a telephonic argument regarding attorney fees.

Audrey filed a supplemental brief regarding attorney fees and costs. The substance of this brief addresses only her claim to an award of attorney fees as a sanction under sections 1101 and 2107—not under the fee-shifting provisions of section 2030.

At the telephonic hearing on September 30, 2020, the parties focused on the availability of attorney fees under sections 1101, subdivision (h), and 2107; section 2030 was not mentioned.

The trial court's finding that Audrey did not "request attorney fees payment on a needs basis under Family Code § 2030 *et sequitur*" is supported by substantial evidence.

---

[6]  The temporary judge referred to himself as the "tj" in many orders and other documents.

*b. The trial court did not err by denying Audrey's request for need-based attorney fees.*

Even if Audrey had properly raised the issue, we would conclude that the trial court did not err by denying a request for need-based attorney fees shifting under section 2030. After a spouse demonstrates an inequity in the parties' ability to retain counsel, the court must then decide whether to shift fees and by how much. (§ 2032.) As Andrew notes in his respondent's appellate brief, in making a need-based fees order the court must first determine whether an award of attorney fees is appropriate, and only then does the court consider the section 4320 factors as part of its determination as to what amount of an award is just and reasonable.

When the parties have roughly equal financial means, the court may in its discretion choose not to make a fee-shifting award under section 2030. (Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2022) ¶ 14:159.2, p. 14–63; *In re Marriage of Winternitz* (2015) 235 Cal.App.4th 644, 658 [court did not err in denying one spouse's fee request, although the other spouse had a larger income, because both spouses had "'considerable indebtedness' and neither could afford counsel"]; *In re Marriage of Duncan*, *supra*, 90 Cal.App.4th at pp. 630-631 [no abuse of discretion in denying § 2030 request for fees and costs where husband's income was much greater than wife's income, but wife was awarded significant amount of liquid assets in dissolution].)

The trial court may consider the parties' relative need and ability to pay in light of their circumstances after the property division. (§ 2032, subd. (c); *In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090, 1110-1111; *In re Marriage of Duncan*, *supra*, 90 Cal.App.4th at p. 631; Hogoboom & King, Cal. Practice Guide: Family Law, *supra*, ¶ 14:169, pp. 14–68 to 14–69.)

Audrey contends the trial court failed to consider any of the "relative circumstances" applicable to the decision on "how to apportion the overall cost of

8

litigation equitab[ly] between the parties." Therefore, she argues, the court failed to exercise any discretion, resulting in an abuse of discretion. (*Riskin v. Downtown Los Angeles Property Owners Assn.* (2022) 76 Cal.App.5th 438, 445-446.) Audrey's briefing in the trial court acknowledged "most of the [section] 4320 factors are not applicable in this case, due to the parties' age and size of the marital estate," but urged the court to consider section 4320, subdivisions (h) (age and health of parties), (k) (balance of hardships between the parties), and (n) (any other factors the court determines are just and equitable). In her appellate briefing, Audrey contends that the following factors supported her request for fees under section 2032: (1) her cognitive decline and residence in an assisted living home; (2) Andrew's bad faith in transferring community property to his girlfriend, which the trial court described as "despicable"; (3) Andrew's bad faith settlement offers; (4) Audrey's need to hire expert witnesses including a handwriting expert, business and property appraisers, and a forensic accountant; and (5) the need to engage in extensive discovery.

The judgment states the trial court considered Andrew's transfer of community property and the resulting award of that property to Audrey, as well as the impact of the parties' litigation strategies on the fees incurred. "[Audrey] has provided no showing as to inequity arising from each party bearing their own fees and costs. Given the magnitude of assets, inclusive of the magnitude of the assets [Audrey] gains from the award under Family Code § 1101(h), the substantial multi-million dollar value of the community estate being divided, and the fact that both sides spent over one million dollars in attorney's fees and costs contesting the issues of this case, and all other applicable statutory factors, the Court declined to award an attorney fee shift pursuant to Family Code §§ 2030 and 2032."

The trial court specifically considered all of the factors Audrey claims were relevant, and the judgment also states that the court had considered "all other applicable statutory factors." A trial court does not need to address each of the section 4320 factors

9

separately to establish a proper exercise of discretion. (*In re Marriage of Diamond* (2021) 72 Cal.App.5th 595, 603-604.) The court here properly exercised its discretion in reaching its decision not to award need-based attorney fees.

Audrey's reliance on *In re Marriage of Dietz* (2009) 176 Cal.App.4th 387 (*Dietz*) is misplaced. As is relevant here, that opinion holds: "The proper legal standard for determining whether to award attorney fees [under sections 2030 and 2032] is not whether the proceedings were brought in good faith or in earnest, or even whether the party requesting attorney fees and costs had the resources to pay attorney fees without considering other factors." (*Id.* at p. 406.) As a need-based award should not be made by determining whether one party acted in good faith, so too it should not be made based on one party's bad faith conduct. Also, while the alleged excessiveness of one party's litigation strategies may be an appropriate factor to consider under section 4320 (if one gets to that point in the analysis), the trial court is in the best position to consider the appropriateness of the parties' settlement offers, the extent and nature of the discovery, and the need for expert witnesses.

### 2. *Section 1101, Subdivision (h)*

Section 1101 provides remedies for one spouse's breach of fiduciary duty vis-à-vis the other spouse's community property. If the breaching spouse acts with malice, fraud, and/or oppression, the trial court shall award to the nonbreaching spouse 100 percent of the undisclosed or transferred asset. (§ 1101, subd. (h).) The court also has the discretion to award attorney fees to the nonbreaching spouse. (*In re Marriage of Rossi* (2001) 90 Cal.App.4th 34, 42 ["'The clear import of the language in subdivision (h) is that an award of attorney fees is discretionary, over and above the mandatory award of the entire asset at issue'"]; *In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 993 [same].)

10

In this case, the court found Andrew breached his fiduciary duty to Audrey by transferring community property assets to his girlfriend and awarded Audrey 100 percent of those community property assets, totaling $1,701,845. However, the court exercised its discretion not to award attorney fees to Audrey. The judgment reads, in relevant part: "Under all the circumstances of the case, the Court deemed the assets awarded to be sufficient sanctions regarding that malfeasance and exercised its discretion to not award attorney fees pursuant to this section."

Audrey compares the trial court's use of the size of the marital estate to deny attorney fees as equivalent to the trial court's error in *Dietz, supra*, 176 Cal.App.4th at page 406. In *Dietz*, the court was considering a request by one spouse for an award of attorney fees from the other spouse "'based on their relative circumstances.'" (*Id.* at p. 405.) The court was not considering a trial court's exercise of its discretion to deny attorney fees under section 1101, subdivision (h). Under section 1101, subdivision (h), there are no required findings and no statutory factors to consider; an award of attorney fees under this statute is solely a matter of what the court in its discretion believes is an appropriate sanction.

Audrey claims the trial court's decision "results in a miscarriage of justice" because the court focused on the amount of the community property being transferred to Audrey without focusing on the fees Audrey incurred to obtain that result—$720,000. Neither in the briefs nor in the documents filed in the trial court does Audrey provide any evidentiary support for this claim. (See Andrew's trial brief listing outstanding issues: "[Audrey] alleges 40% of her attorney fees were expended on the issues of secret stock/cash transfers and Canterbury house/funds. As is discussed below, [Audrey]'s figures on these issues have no basis within the supporting documentation and in fact, the evidence presented at trial show the figures are a farce. However, by [Audrey]'s alleged breakdown, [Audrey] wasted 40% or approximately $720,000 on issues which could

11

have been resolved two years ago if [Audrey] engaged in the settlement discussions [Andrew] put forth."

More importantly, the trial court explicitly stated it had considered "all the circumstances of the case" and that the award of the community property assets to Audrey was a "sufficient sanction[]" against Andrew. Section 1101, subdivision (h), gives the court the discretion to impose sanctions against a spouse breaching a fiduciary duty in addition to the award of the property to the nonbreaching spouse. The record indicates to this court that the trial court exercised its discretion not to award more sanctions. We find no error.

## C. *Prejudgment Interest*

The trial court's judgment reads as follows regarding prejudgment interest: "As a general rule, pre-judgment interest is not obtainable in the absence of statutory and/or common law authority; Civil Code § 3288 provides for interest in cases not based on contract (and, in particular, those involving fraud, etc.), at the jury's discretion; the section applies to court trials, such as this one, as well. [Citation.] The Court considered all of the dynamics in the case, including but not limited to its award of 100% of certain community property assets to [Audrey] pursuant to Family Code § 1101(h), and the Court exercises its discretion not to award pre-judgment interest on any of the assets with respect to which it [was] sought. As such, [Audrey]'s request for the addition of . . . prejudgment interest on numerous assets is denied."

Andrew argues initially that prejudgment interest is not permitted in family law cases. Andrew argues that because harsher penalties—namely, the award of 100 percent of the affected assets—are available under section 1101, prejudgment interest is not available. Andrew cites no published case supporting his argument, and the relevant authorities are to the contrary.

12

Prejudgment interest may be awarded in the discretion of the trier of fact in any "action for the breach of an obligation not arising from contract" and in "every case of oppression, fraud, or malice." (Civ. Code, § 3288; *Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814, fn. 16.) "For more than a century it has been settled that one purpose . . . of prejudgment interest in general, is to provide just compensation to the injured party for loss of use of the award during the prejudgment period—in other words, to make the plaintiff whole as of the date of the injury." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 663-664.) Prejudgment interest is available unless expressly prohibited by a statutory scheme. (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 1004, 1009-1011.)

Andrew relies on California Rules of Court, rule 5.17, which provides: "A party in a family law proceeding may only ask that the court make orders against or involving the other party, or any other person, that are available to the party in these rules, Family Code sections 17400, 17402, and 17404, or other sections of the California Family Code." Section 1101, subdivision (h), provides that the remedies for a breach of fiduciary duty by a spouse include *but are not limited to* awarding the full value of the community property asset to the nonoffending spouse. We note that section 1101, subdivision (h), does not prohibit an award of prejudgment interest.

While we have found no published case that specifically holds that prejudgment interest may be awarded in a family law matter, in some cases the appellate court has addressed the issue of prejudgment interest without questioning its availability. (See *In re Marriage of Brandes* (2015) 239 Cal.App.4th 1461, 1488 [wife waived the issue of prejudgment interest on damages due to husband's alleged breach of fiduciary duty]; *Patrick v. Alacer Corp*. (2011) 201 Cal.App.4th 1326, 1344-1345 [affirming award of prejudgment interest under Civ. Code, § 3288 to surviving spouse for the period in which she was unable to use her community property interest in deceased spouse's stock in defendant corporation].)

13

Based on all the foregoing, we conclude that the trial court had the authority to award prejudgment interest to Audrey in its discretion.

We further conclude, however, that the trial court did not abuse its discretion by opting not to award prejudgment interest to Audrey. Audrey argues that the court failed to exercise any discretion in reaching its decision. To the contrary, as noted above, the court considered the total amount Audrey was receiving by being awarded the full value of the specified community property assets, as well as the "dynamics" of the case. A trial court need not explain in detail everything it considers in order to establish it has exercised its discretion. Here, the court fully explained why it was choosing not to order prejudgment interest as a further sanction against Andrew for his breach of fiduciary duty. We find no error.

III

DISPOSITION

The judgment is affirmed. Respondent to recover costs on appeal, with the exception of costs related to the appeal of the Nido Way property, as to which the parties stipulated they would bear their own costs when dismissing that issue from the present appeal.

MOORE, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOTOIKE, J.

14